UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHCA BAYSHORE, L.P. D/B/A HCA HOUSTON HEALTHCARE SOUTHEAST, et al., | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-2895-B |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS/BLUE SHIELD OF LOUISIANA, | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiffs CHCA Bayshore, L.P. d/b/a HCA Houston Healthcare Southeast; Orthopedic Hospital, Ltd. d/b/a Texas Orthopedic Hospital; Houston–PPH, LLC d/b/a HCA Houston Healthcare Medical Center; St. David's Healthcare Partnership, L.P., LLP d/b/a St. David's Round Rock Medical Center and d/b/a St. David's Medical Center; and CHCA Clear Lake, L.P. d/b/a HCA Houston Healthcare Clear Lake (collectively, the "Hospitals") filed their Complaint (Doc. 1) in October 2025 against Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana ("BCBSLA").

In February 2026, BCBSLA filed a Motion to Dismiss the Complaint (Doc. 14). For the reasons described below, the Court **GRANTS in part** the Motion.

## I.

## BACKGROUND

This case involves an insurance reimbursement dispute between the Hospitals and BCBSLA.

"BCBS LA is a licensee of the Blue Cross and Blue Shield Association . . . and is licensed to offer Blue Cross and Blue Shield . . . branded health plans in the State of Louisiana." Doc. 1, Compl. ¶ 6. The Hospitals are "acute care hospitals in Texas." *Id.* ¶ 10. Relevant to this dispute, the Hospitals provided treatment to 15 patients who reside in Texas and have insurance issued and/or administered by BCBSLA. *See id.* ¶¶ 7, 33-200. For varying reasons, BCBSLA either denied the claims or did not fully reimburse the claims. *Id.* ¶ 258.

The Hospitals entered into two Hospital Service Agreements ("HSAs") with non-party Blue Cross Blue Shield of Texas ("BCBSTX"). *Id.* ¶ 11. The HSAs set the terms by which the Hospitals will treat patients with BCBSTX plans. *Id.* ¶ 12. The discounted rates set in the HSAs apply not only to BCBSTX subscribers, but also to patients who have any Blue Cross Blue Shield plan pursuant to the "Blue Card Program." *Id.* ¶ 13. "BlueCard is a national program that enables members of one Blue Cross and Blue Shield . . . Plan to obtain in-network healthcare services while traveling or living in another [Blue Cross Blue Shield] Plan service area." Doc. 1-6, Compl., Ex. 4, 117.[1]

Under the Blue Card Program, an individual with any Blue Cross Blue Shield plan can obtain treatment at the Hospitals under the rates agreed upon in the HSAs even though he or she is not insured by BCBSTX—the in-state plan. *See* Doc. 1, Compl. ¶ 13. In this context, the Blue Card Program works as follows: After treating a patient with a BCBSLA health plan, the Hospitals submit a claim to BCBSTX (the "Host Plan"), which reviews the claim and prices it according to the HSAs. *See id.* BCBSTX then sends the claim to BCBSLA (the "Home Plan"), which applies the patient's benefits to the claim and processes the claim. *See* Doc. 1-6, Compl., Ex. 4, 117. BCBSLA then

[1] The Court cites to the page number generated by the ECF system for the combined Document 1 with all attachments.

provides BCBSTX its coverage determination and BCBSTX pays the claim to the Hospital. *Id.* The Blue Card Program overview states that the Host Plan is the "sole contact for all [Blue Cross Blue Shield] claim submissions, payments, adjustments, services and inquiries." *Id.*

Some of the patients who received treatment by the Hospitals have an "employer-sponsored health insurance policy that . . . ERISA governs." *Id.* ¶ 239. The ERISA plans include anti-assignment provisions. *See, e.g.*, Doc. 14-1, Ex. 4-15, Health Plans, at Appx_94. Despite those provisions, upon admission to the Hospitals, each patient signs a Conditions of Admission Form that includes "an assignment of the patient's health insurance benefits" to the Hospitals:

> [P]atient assigns all his/her rights and benefits under existing polices of insurance providing coverage and payment for any and all expenses incurred as a result of services and treatment rendered by the Provider . . . I hereby irrevocably appoint the Provider as my authorized representative to pursue any claims . . . and/or legal remedies.

Doc. 1, Compl. ¶ 32. According to the Hospitals, this Form authorizes them to assert the patients' claims. *Id.* Moreover, the Hospitals allege that each claim submitted to BCBSLA indicated that it was submitted through the patient's assignment of benefits to the Hospital. *Id.* The Hospitals allege that BCBSLA did not inform them that it was denying any claims because of anti-assignment provisions in the patients' health plans. *Id.* For some of the claims, the Hospitals "received correspondence or communications directly from BCBSLA." *Id.* ¶ 30.

Based on BCBSLA's denial or partial payment of the claims, the Hospitals seek no less than $673,030.79 in unpaid reimbursement from BCBSLA and assert six counts: (1) Petition to Compel Arbitration Pursuant to 9 U.S.C. § 4 ("Count I"); (2) Breach of Contract (HSAs) ("Count II"); (3) Breach of Implied-In-Fact Contract ("Count III"); (4) Failure to Comply with Health Benefit Plan In Violation of ERISA ("Count IV"); (5) Breach of Contract (For Plans Not Subject to ERISA)

("Count V"); and (6) Promissory Estoppel ("Count VI"). For the contract counts, the Hospitals contend that BCBSLA expressly or impliedly assumed the terms of the HSAs in three ways: "(a) by reason of its status as an 'Affiliate' of [Blue Cross and Blue Shield Association]; (b) as a 'Payer' under the [ HSAs]; and (c) by its participation in the BlueCard Program." *Id.* ¶ 13; Doc. 21, Resp., 5-13. Because BCBSLA benefited from the discounted rates set in the HSAs, the Hospitals believe that BCBSLA is therefore bound by some of the HSAs' obligations.[2] *See* Doc. 1, Compl. ¶ 14.

BCBSLA moves to dismiss each Count. Specifically, BCBSLA moves to dismiss Count IV (the ERISA Count) for lack of standing under Rule 12(b)(1). BCBSLA moves to dismiss Counts II, III, V, and VI (the contract Counts) for lack of personal jurisdiction under Rule 12(b)(2).[3] BCBSLA also moves to dismiss Counts I, II, III, and VI under Rule 12(b)(6) for failure to state a claim. Lastly, BCBSLA argues that Counts IV and V are time-barred. *See* Doc. 14, Mot., 2. The Hospitals have filed a response (Doc. 21), and BCBSLA has filed a reply (Doc. 22). The Court evaluates the Motion below.

## II.

## LEGAL STANDARD

### A. *Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction . . . ." *Stockman v. Fed. Election Comm'n*, 138

[2] Although the Court takes as true all well-pleaded facts, the same consideration is not given for legal conclusions. *See Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) ("For the purposes of a motion to dismiss, we must take all of the factual allegations in the complaint as true, but we are not 'bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[3] Although BCBSLA does not explicitly cite to Rule 12(b)(2) in its motion to dismiss, it does clearly argue that the Court lacks personal jurisdiction over BCBSLA for the state law claims. *See* Doc. 14, Mot., 9. Therefore, the Court finds that BCBSLA sufficiently raised a challenge under Rule 12(b)(2) in its Motion to Dismiss.

F.3d 144, 151 (5th Cir. 1998) (citation omitted). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citation omitted). "Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal subject matter jurisdiction. *Id.* "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. . . . Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (Fitzwater, J.) (citation omitted). A facial challenge to subject matter jurisdiction occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* Under a facial challenge, a court determines if the complaint alleges sufficient jurisdictional allegations. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). In contrast, a factual challenge to jurisdiction occurs when the defendant "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A defendant raises a factual challenge when it submits evidentiary materials with its motion. *See id.* Then, the burden shifts to the plaintiff "to submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523. Under a factual challenge, the plaintiff's jurisdictional allegations are not presumed true. *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. Unit A Sept. 1981).

B. *Rule 12(b)(2)*

In a diversity case, when a non-resident defendant moves to dismiss for lack of personal jurisdiction and the Court does not conduct an evidentiary hearing, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipMgmt. Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citation omitted). In evaluating a personal jurisdiction challenge, the court may review both the allegations in the complaint and the record as it exists at the time of the motion. *See Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020) (citation omitted). "[J]urisdictional allegations must be accepted as true," *Sangha*, 882 F.3d at 101 (citation omitted), and conflicts of fact are resolved in the plaintiff's favor, *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020) (citation omitted).

The Court may only exercise personal jurisdiction over a nonresident defendant where (1) the forum state's long-arm statute provides for personal jurisdiction over the non-resident defendant; and (2) the exercise of jurisdiction by the forum state over that non-resident defendant is "consistent with due process under the United States Constitution." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (citation omitted). Since the Texas long-arm statute "extends to the limits of the United States Constitution," the Court focuses only on the second inquiry. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A court's authority over a non-resident defendant depends on the contacts that the non-resident defendant had with the forum state. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). The contacts must be such that "maintenance of the suit is reasonable in the context of our

federal system of government, and does not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted) (quoting *Int'l Shoe*, 326 U.S. at 316-17). "In giving content to that formulation, the [Supreme] Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U. S. 255, 262 (2017)). There are two forms of personal jurisdiction: general and specific. *Id.* (citation omitted). Because the Hospitals neither allege facts suggesting that BCBSLA is "essentially at home" in Texas nor argue that BCBSLA is subject to general personal jurisdiction in Texas, the Court evaluates only if BCBSLA is subject to the forum state's specific personal jurisdiction.

The Fifth Circuit has stated that three conditions must be met to show specific personal jurisdiction: (1) the non-resident defendant must "purposefully avail[] itself of the privilege of conducting activities in the forum State"; (2) "the plaintiff's claim must arise out of or relate to those purposeful contacts"; and (3) the exercise of jurisdiction must be "fair and reasonable to the defendant." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317-18 (5th Cir. 2021) (citation modified).

## III.

## ANALYSIS

This opinion is divided into five parts. Section A evaluates BCBSLA's argument that the Court lacks subject matter jurisdiction over the ERISA count. Section B evaluates BCBSLA's argument that the Court lacks personal jurisdiction over the state contract counts. BCBSLA is correct that the Hospitals have not carried their burden in showing that the Court has subject matter jurisdiction over the ERISA count or personal jurisdiction over the state contract counts. Section C evaluates the Hospitals' argument that jurisdictional discovery is necessary. The Court denies the

request. Section D evaluates whether leave to amend is appropriate. The Court finds that it is. Lastly, Section E evaluates BCBSLA's argument that the Court should dismiss the arbitration count. The Court determines that deferring ruling on BCBSLA's argument regarding the arbitration count is appropriate.

A. *The Hospitals Do Not Have Standing to Bring the ERISA Count (Count IV).*

ERISA's civil enforcement provision—29 U.S.C. § 1132—does not authorize healthcare providers, like hospitals, to directly sue insurers to collect ERISA plan benefits. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citation omitted). Therefore, healthcare providers obtain assignments of benefits from their patients to "stand[] in the[ir] shoes" and assert claims against insurers. *Id.*; *see Harris Methodist Ft. Wor. v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir.2005) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." (citing *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir.2003))). The Fifth Circuit has consistently held that standing to bring an ERISA action is a jurisdictional matter that is properly challenged under Rule 12(b)(1). *See Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262-63 (5th Cir. 2020) (collecting precedential Fifth Circuit case law holding that ERISA standing is an Article III challenge).[4]

Here, the Hospitals allege that they have ERISA standing because they bring the count as the patients' assignees. *See* Doc. 1, Compl. ¶ 240. Attached to the Complaint are the Hospitals'

[4] The Hospitals point to an opinion by another judge in this district who instead applied a Rule 12(b)(6) standard to an ERISA standing challenge. *See* Doc. 21, Resp., 3 n.14 (citing *Columbia Hosp. at Med. City Dall. Subsidiary, LP v. Anthem Health Plans of Va. Inc.*, No. 3:25-CV-0689-X, 2026 WL 36075, at *2 (N.D. Tex. Jan. 6, 2026) (Starr, J.)). The Court cannot follow that approach in light of binding Fifth Circuit precedent that analyzes ERISA standing under Rule 12(b)(1), even when based on an assignment of benefits. *See Cell Sci. Sys.*, 804 F. App'x at 262-63.

Conditions of Admission Forms executed by the patients. *See generally* Doc. 1-7, Ex. 5, Forms. The Forms include an "Assignment of Benefits" section that assigns all rights and benefits under the plans to the Hospitals and also authorizes direct payment to the Hospitals. *See, e.g.*, *id.* at 132.

In its Motion to Dismiss, BCBSLA argues that the Court lacks jurisdiction over the Hospitals' ERISA count because the ERISA plans at issue contain anti-assignment clauses. *See* Doc. 14, Mot., 13-14. Therefore, BCBSLA contends that any purported assignments of benefits are invalid.

The Court first considers whether BCBSLA's attack on jurisdiction is a facial or factual challenge. BCBSLA challenges the validity of the assignments, which is a fact supporting the complaint. *See Cell Sci. Sys.*, 804 F. App'x at 263-64 (noting that BCBSLA raised a factual challenge when it "challenged the underlying facts supporting the complaint, i.e. the validity of the assignment, rather than merely challenging the allegations on their face"). Moreover, BCBSLA supports its jurisdictional challenge with evidentiary materials: the ERISA health plans. *See* Doc. 14-1, Exs. 4-15, Health Plans, at Appx_8-Appx_1481. Accordingly, the Court finds that BCBSLA has raised a factual attack on subject matter jurisdiction. *See Windmill Wellness Ranch, LLC v. Meritain Health, Inc.*, No. SA-20-CV-01388-XR, 2021 WL 2635845, at *3 (W.D. Tex. June 25, 2021) (determining that the defendant raised a factual attack when its jurisdictional argument relied on the ERISA plan not attached to the complaint). The Court therefore looks beyond the pleadings to the evidentiary materials when evaluating the jurisdictional challenge and does not presume the Hospitals' jurisdictional allegations are true. *See Evans*, 657 F.2d at 663.

"If the provider lacks standing to bring the lawsuit due to a valid and enforceable anti-assignment clause, then federal courts lack jurisdiction to hear the case." *Dialysis Newco, Inc. v. Cmty.*

*Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 353 (5th Cir. 2002)). The Fifth Circuit has explained "that when an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Id.* at 251 (citing *LeTourneau*, 298 F.3d at 352-53).

In interpreting the ERISA plan, courts are instructed to read the provisions "as a whole," "according to their plain meaning," and "as they are likely to be understood by the average plan participant." *Id.* (citation modified). If a court discovers ambiguities when evaluating the anti-assignment clause, generally, "any ambiguities will be resolved against the [p]lan." *Id.* (quoting *Dall. Cnty. Hosp. Dist. v. Assocs.' Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002).

The health plans contain the following anti-assignment clause:

> A Member's rights and Benefits under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member. We will recognize assignments of benefits to Hospitals if both this Benefit Plan and the Provider are subject to La. R.S. 40:2010. If both this Benefit Plan and the Provider are not subject to La. R.S. 40:2010, We will not recognize assignments or attempted assignments of benefits. Nothing contained in the written description of health coverage shall be construed to make the health plan or Us liable to any third party to whom a Member may be liable for the cost of medical care, treatment, or services.

*See* Doc. 14-1, Exs. 4-15, Health Plans, at Appx_94, 223,[5] 339, 456, 583, 697, 806, 923, 1047, 1186, 1321, 1455. Neither party claims that the anti-assignment clause here is ambiguous. Indeed, the Fifth Circuit has found substantively identical anti-assignment language "clearly and unambiguously prohibit[ed] a participant's assignment of benefits." *Cell Sci. Sys.*, 804 F. App'x at 266. Accordingly, the Court likewise finds this clause unambiguously prohibits assignments in their entirety, subject

---

[5] Although the language used in the second health plan's anti-assignment clause varies slightly from the langue used in the other health plans, the substance is the same.

to an exception that is inapplicable here.[6]

The Hospitals argue that the assignments in the Conditions of Admission Forms are valid irrespective of the anti-assignment language in the health plans because BCBSLA waived its right to assert the anti-assignment provisions. *See* Doc. 21, Resp., 19-21. In support of this argument, the Hospitals point to their allegation that "[a]t no point during the processing of any of the claims . . . did BCBS LA deny any claims based upon or raise the existence of any anti-assignment language in the Subscribers' respective health plans." *See* Doc. 1, Compl. ¶ 32. The Hospitals also cite *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992) ("*Herman II*") for the proposition that an insurer cannot rely on an anti-assignment provision found in the patient's health plan if it does not assert it during the claim process period. *See* Doc. 21, Resp., 19. In *Herman II*, the Fifth Circuit found that an insurer was estopped from raising an anti-assignment clause as a basis for denying a claim when it did not assert the anti-assignment clause in any of the communications it had with the hospital over the three-year investigation period. *Id.*

"Waiver is the voluntary or intentional relinquishment of a known right." *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 273 (5th Cir. 2022) (quoting *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)). It "describes the act, or the consequences of the act, of one party only." *Id.* (quoting *Pitts*, 931 F.2d at 357). An analysis on waiver then "focus[es] on the defendant['s] acts." *Id.* Estoppel is the "close cousin" of waiver. *Id.* (citation omitted). To "establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."

[6] La. R.S. section 40:2010 applies to "each hospital in the state which is licensed by the Louisiana Department of Health." As acute hospitals in Texas, *see* Doc. 21, Resp., 2, the Hospitals here are not subject to La. R.S. section 40:2010.

*Cell Sci. Sys.*, 804 Fed. Appx. at 265 (quoting *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005)).[7]

This case is indistinguishable from the *Cell Science Systems* case where the Fifth Circuit found the provider lacked ERISA standing. There, Cell Science Systems ("CSS"), a blood test developer, sued BCBSLA for failing to reimburse it for tests administered to patients that were "participants and/or beneficiaries of health benefit plans managed by BCBSLA." *Cell Sci. Sys.*, 804 F. App'x at 261. These plans were governed by ERISA. *Id.* CSS relied on assignments of benefits it received from the patients to sue BCBSLA. *Id.* Pointing to anti-assignment provisions in the health plans,[8] BCBSLA argued that CSS lacked standing to assert the ERISA cause of action and raised a factual attack. *Id.* at 263-64. In response to the factual attack, CSS "failed to submit any materials attempting to prove subject matter jurisdiction." *Id.* at 265. Instead, CSS relied on the *Herman II* case and argued that BCBSLA was estopped from asserting the anti-assignment clause from the ERISA plans because it did not raise the clause until litigation. The Fifth Circuit rejected CSS's reading of *Herman II*:

> CSS relies heavily on our decision in *Hermann II* in which our court held that the plan was estopped from asserting an anti-assignment clause after failing to assert the clause at any point during the three years of ongoing investigation and communication regarding the claim; yet, the plan relied on the anti-assignment clause in ultimately denying the claim. *Hermann II*, 959 F.2d at 574-75. Unlike the plan in *Hermann II*, here, BCBSLA did not invoke the anti-assignment clause to deny the claim; it invoked the anti-assignment claim only as a challenge to jurisdiction. There is no indication from the record that BCBSLA either misrepresented or misled CSS with respect to its intention to enforce the anti-assignment clause in its plan.

*Id.* at 265. Accordingly, the Court found that CSS "failed to demonstrate by a preponderance of the

[7] Although the Hospitals argue BCBSLA "waive[d]" the anti-assignment provision by not asserting it during the claim processing period, *see* Doc. 21, Resp. Br., 19, their argument seems to rely on a theory of estoppel rather than waiver.

[8] As previously mentioned, the *Cell Science Systems* case involved nearly identical anti-assignment language to this case.

evidence that it ha[d] standing to bring suit" and affirmed the district court's decision to grant the motion to dismiss under Rule 12(b)(1). *Id.* at 266.

Although unpublished Fifth Circuit opinions are not binding on district courts, they are highly persuasive as a strong predictor of how the Fifth Circuit would rule on the same facts in the future. Here, the Court is persuaded by the Fifth Circuit's analysis in *Cell Science Systems* because it involves almost identical facts to the case at hand. Like CSS, here, the Hospitals failed to attach evidence to support their waiver and/or estoppel argument. As the burden is on the Hospitals to prove that this Court does have subject matter jurisdiction by a preponderance of the evidence, their failure to offer evidence when faced with a factual challenge is fatal. *See Highland Surgical Ctr. LLC v. Wells Fargo & Co.*, No. 4:21-CV-02409, 2022 WL 23043242, at *2 (S.D. Tex. Feb. 7, 2022) (finding plaintiffs failed to demonstrate subject matter jurisdiction by a preponderance of the evidence when they offered no evidence that the defendant waived its right to invoke the anti-assignment clause), *amended on reconsideration on other grounds*, No. 4:21-CV-02409, 2022 WL 23043243 (S.D. Tex. July 21, 2022). Moreover, like in *Cell Science Systems*, BCBSLA is not estopped from raising the anti-assignment clause to contest jurisdiction just because it might be estopped from raising the clause as a basis for denying the claims. Accordingly, the Hospitals have failed to prove this Court has subject matter jurisdiction over their ERISA count by a preponderance of the evidence. Dismissal of the ERISA claim (Count VI) is therefore appropriate.

*B. The Court Lacks Specific Personal Jurisdiction Over the State-Law Counts.*

The Hospitals contend that the Court has personal jurisdiction over the state-law counts asserted against BCBSLA: (1) breach of contract of the HSAs, (2) breach of implied-in-fact contract of the HSAs; (3) breach of contract (for non-ERISA plans); and (4) promissory estoppel. According

to the Hospitals, "the same facts form the basis of all of [the Hospitals'] causes of action." Doc. 21, Resp., 15. Those facts are the Hospitals' provision of medically necessary services to patients with BCBSLA health plans, and BCBSLA's improper denial of coverage. *See id.*

The Hospitals first request that the Court exercise pendent personal jurisdiction over the state-law counts because ERISA provides for nationwide service of process. *See* Doc. 21, Resp., 13-14. Under the federal common law, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir.2002)). This personal jurisdiction "piggybacking" is referred to as either pendent personal jurisdiction or supplemental personal jurisdiction. "[T]he exercise of pendent personal jurisdiction remains discretionary with the court." *Id.* (citations omitted).

The Court declines to exercise pendent personal jurisdiction over the state law counts. The Court does not have subject matter jurisdiction over the ERISA count. Thus, the count that could establish the initial personal jurisdiction for the state-law counts is no longer present. Pendent personal jurisdiction is therefore not appropriate under these facts.

The Hospitals also assert that the Court has personal jurisdiction over BCBSLA because "BCBS LA conducts substantial business in Texas, and a substantial part of the events or omissions giving rise to [the Hospitals'] claims occurred here." Doc. 1, Compl. ¶ 7. Specifically, the Hospitals identify the following contacts that they believe demonstrate BCBSLA is subject to specific personal jurisdiction in Texas: (1) the patients reside in Texas; (2) the patients received their medical services

in Texas; (3) BCBCSLA "issued and/or administered these health plans to/for Texas residents knowing of the possibility of having to resolve disputes under the HSAs based on Texas law;" and (4) by accepting the benefit of discounted rates under the HSA, BCBSLA agreed to comply with the HSA's Texas choice of law clause. Doc. 1, Compl. ¶ 7; *see also* Doc. 21, Resp., 15-16. The purported contacts can be grouped into two buckets. Bucket one regards the patients' residency in Texas and their access to medical care in Texas by way of the Blue Card Program. In contrast, bucket two focuses on BCBSLA's purported obligations under the HSAs. The Court begins its analysis by evaluating the first bucket and then turns to the second bucket.

To guide its analysis, the Court looks to opinions addressing similar personal jurisdiction challenges. First, in *St. Luke's Episcopal Hospital v. Louisiana Health Service & Indemnity Company*, the court found that the Texas hospital did not allege sufficient facts to support exercising personal jurisdiction over BCBSLA. *See* No. CIV.A. H-08-1870, 2009 WL 47125, at *4-9 (S.D. Tex. Jan. 6, 2009). The hospital sued BCBSLA in Texas for failing to fully reimburse a claim for a patient insured by BCBSLA. *See id.* at *1. The hospital treated the patient pursuant to the Blue Card Program. *Id.* Prior to treatment, BCBSLA communicated its authorization for treatment to the Hospital. *See id.* The court noted that BCBSLA offered insurance to Louisiana residents and issued policies only within the state. *See id.* The hospital argued that the court could exercise personal jurisdiction over BCBSLA because BCBSLA authorized treatment over the phone to the hospital twice, made a partial payment for the services rendered in Texas, and participated in the Blue Card program. *Id.* at *4.

The *St. Luke's* court first noted that "the weight of authority . . . holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment." *Id.* at *5. In

support, the court pointed to three cases standing for the proposition that receiving calls and sending payment to an out-of-state hospital did not result from affirmative actions by the insurer, but the independent choice of the insured to receive medical care in another state. *See id.* at *5-6. As specific personal jurisdiction is focused on whether the *insurer* affirmatively acted to purposefully avail itself of the privilege of conducting activities in the forum, actions resulting from just the insured's choice of hospital did not demonstrate sufficient contacts between the insurer and the forum. *See id.*

The Fifth Circuit addressed a similar personal jurisdiction issue in *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado* and cited with approval the district court's reasoning in *St. Luke's*. *See* 615 F.3d 364, 369-74 (5th Cir. 2010). In *Choice Healthcare,* the relevant contacts were the payments the insurer made to the provider and the insurer's ability to access discounted coverage from certain health care providers under a multistate program similar to the Blue Card Program. *Id.* at 369. The Fifth Circuit relied on the reasoning from *St. Luke's* to hold that authorizing treatment and partially paying a claim does not create a sufficient contact with the forum. *See id.* at 370 (noting that an insurer does not purposefully avail itself to the forum state when an insured "independently and without encouragement from [insurer] presented to a Louisiana hospital for urgent care while visiting Louisiana"). The Fifth Circuit agreed with the analysis from *St. Luke's* with respect to participation in the Blue Card Program and found that joining a multistate plan, on its own, is insufficient to show the insurer purposefully availed itself to the benefits and privileges of conducting business in the forum state. *See id.* at 371-72. The Fifth Circuit then affirmed the district court's conclusion that the provider failed to show the court had personal jurisdiction over the insurer. *Id.* at 374.

The Court in *St. Luke's* and *Choice Healthcare* also relied on the Fifth Circuit's decision in

*Perez v. Pan American Life Insurance,* No. 96-20241, 1996 WL 511748 (5th Cir. Aug. 20, 1996)). In *Perez*, the Fifth Circuit decided the forum state lacked personal jurisdiction over a non-resident insurer even when the insurer knew the insured was going to travel to the forum state to obtain care. *Id.* at *2. Specifically, a Guatemalan insurance company with a "worldwide coverage" policy approved an insured's application to go to Texas to receive medical services before the insured had entered the forum. *Id. a*t *1. After treatment, the insurance company refused to pay the claim. *Id.* The insured sued in Texas. *Id.* In contending that the forum had specific personal jurisdiction over the insurance company, the insured argued that the insurance company's express authorization of the insured's decision to obtain medical treatment in Texas showed it purposefully availed itself of the benefits and protections of the forum. *Id.* at *1 The Court disagreed, finding that neither the worldwide coverage language in the policy nor the approval of treatment in Texas was a sufficient "contact" with Texas. *Id.* at *2.

Relying on that holding, the *St. Luke's* court stated "that merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." *St. Luke's*, 2009 WL 47125, at *8. Likewise, the Fifth Circuit noted that an insurer's awareness that an insured is seeking treatment in the forum state is insufficient to create personal jurisdiction over the insurer. *See Choice Healthcare*, 615 F.3d at 370-71 (citing *Perez*, 1996 WL 511748, at *1-2).

The Hospitals argue that by knowingly issuing policies to people who reside in Texas, BCBSLA purposefully availed itself to the benefits of the forum. *See* Doc. 21, Resp. Br., 16. In support, the Hospitals point to *In re Blue Cross Blue Shield Antitrust Litigation*, 225 F. Supp. 3d 1269

(N.D. Ala. 2016), as persuasive authority.[9] There, the Alabama district court found that the insurers were subject to specific personal jurisdiction in the forum based on three facts taken togethers. First, by participating in the Blue Card Program. Second, by agreeing to provide health group plans to employers that had employees that resided in multiple states including the forum state. And third, by knowing that some of the employees lived in the forum state when it issued the health plans. *Id.* at 1310.

The Court declines to follow *In Re Blue Cross Blue Shield Antitrust Litigation* because it finds the principles derived from the in-circuit cases discussed above more persuasive. The principal that the *St. Luke's* and the *Choice Healthcare* courts derived from the *Perez* case is that an insurer does not purposefully avail themselves to the forum just by knowing an insured is obtaining treatment in another state. *See Choice Healthcare,* 615 F.3d at 370-71; *St. Luke's*, 2009 WL 47125, at *8.

Here, the method by which the Hospitals obtain the knowledge is slightly different than *Perez*. It is knowledge of where the insured resides rather than knowledge that the insured is going to seek a one-time treatment in a different state. But despite that difference in method, the quality of the insurer's knowledge in both situations is the same. As alleged, the insurer knows a patient is obtaining treatment outside the issuing state using the Blue Card Program. The method by which BCBSLA obtains the knowledge—whether by a pre-approval request or just knowing that some of

[9] The Hospitals also point to *St. David's Healthcare*. The Court finds this case distinguishable because it relied on pendent personal jurisdiction to exercise personal jurisdiction over the state-law counts. *St. David's Healthcare P'ship v. Anthem Blue Cross Life & Health Ins. Co.*, No. 1-23-CV-00591-ADA, 2023 U.S. Dist. LEXIS 242130, at *13-14 (W.D. Tex. Dec. 27, 2023). Here, because there is no ERISA standing, the same reasoning for exercising pendent personal jurisdiction is missing. The Court also stated that it could exercise specific personal jurisdiction over the insurer because the Hospital "contends that by accessing the benefits of the Agreement and administering health plans to Texas residents, Anthem did business in the state sufficient to establish personal jurisdiction." *Id.* at *14. But the court provided no analysis regarding how it came to that conclusion. Accordingly, the Court finds that section of the opinion unpersuasive.

the employer's employees reside in Texas—does not change the minimum contacts analysis. Accordingly, the Court applies the principal derived from *Perez* and finds that BCBSLA's knowledge that some of the insureds reside in Texas does not create a sufficient contact to support personal jurisdiction.[10]

The Court now turns to the second bucket: BCBSLA's purported contract contacts. The Hospitals argue that the HSAs' Texas choice-of-law clause demonstrates BCBSLA has sufficient contacts with Texas. *See* Doc. 21, Resp., 15-16. The Hospitals contend that by accessing the benefits of the HSAs, BCBSLA agreed to comply with the HSAs' terms, including the Texas choice-of-law clause. *See* Doc. 1, Compl. ¶ 7. Even assuming for purposes of this personal jurisdiction analysis that the Hospitals have plausibly alleged facts showing BCBSLA is bound by the HSAs, the Court finds the choice-of-law clause is insufficient, whether on its own or coupled with the Blue Card Program, to show BCBSLA purposefully availed itself to benefits of the forum.

"[I]t is . . . well settled that 'an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222-23 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The Fifth Circuit has also stated that the inclusion of a Texas choice-of-law clause alone is "not dispositive of the issue of specific personal jurisdiction." *Id.* at 223 (other citation omitted) (citing *Burger King Corp.*, 471 U.S. at 481-82). "When combined with other factors, a choice-of-law clause may reinforce a conclusion that a defendant 'deliberate[ly] affiliat[ed] with the forum State and [had] reasonable foreseeability of possible litigation there.'" *Id.*

[10] The Court notes that this outcome is consistent with a recent decision from the Eastern District of Texas that evaluated the same argument that the Hospitals bring here. *See Columbia Hosp. At Med. City of Dall. Subsidiary, v. Cal. Physicians' Serv.*, No. 4:24-CV-924, 2026 WL 2365066, at *9 (E.D. Tex. Aug. 14, 2026).

(quoting *Burger King*, 471 U.S. at 482). "However, the presence of a choice-of-law clause is not sufficient in itself to establish personal jurisdiction when, as here, the contacts do not otherwise demonstrate that the defendant 'purposefully availed himself of the privilege of conducting business in Texas.'" *Id.* (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

Here, the HSAs' Texas choice of law clause is insufficient to demonstrate BCBSLA purposefully availed itself of the privilege of conducting business in Texas. The Complaint does not allege that BCBSLA was involved in the inclusion of the choice-of-law clause or otherwise knew about the clause. More generally, there are no allegations indicating BCBSLA played any role in the creation or negotiations of the HSAs. *See Pervasive Software*, 688 F.3d at 223 (noting that personal jurisdictional analysis looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when evaluating the sufficiency of defendants' contacts with the forum). Without more facts, the Hospitals' allegation that BCBSLA is bound by the HSAs does not demonstrate BCBSLA made minimum contacts with Texas.

At bottom, the Hospitals have failed to carry their burden in establishing a prima facie case of personal jurisdiction. Dismissal of the state contract counts under Rule 12(b)(2) is therefore appropriate. The Court need not address BCBSLA's other arguments for dismissal.

C. *The Court Denies the Hospitals' Request for Jurisdictional Discovery.*

In their response to the Motion to Dismiss, the Hospitals include a request that the Court permit "limited discovery on BCBSLA's contacts with the State of Texas and an evidentiary hearing" if the Court finds BCBSLA is not subject to personal jurisdiction in Texas. Doc. 21, Resp., 17. BCBSLA opposes the request on the ground that the Hospitals "failed to identify any disputed jurisdictional facts that discovery could resolve." Doc. 22, Reply, 3.

District courts have broad discretion in deciding whether a party should be permitted to conduct jurisdictional discovery. *See X Corp. v. World Fed'n of Advertisers*, 826 F. Supp. 3d 772, 800 (N.D. Tex. 2026) (Boyle, S.J.) (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014)).“Discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. . . . When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.” *Id.* (quoting *Kelly v. Syria Shell Petrol. Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). “A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction.” *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-CV-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (McBryde, J.) (citing *Kelly*, 213 F.3d at 855). “A court can deny leave to conduct jurisdictional discovery when the movant fails to specify the facts it believes discovery would uncover and how these facts would support personal jurisdiction.” *Mary Kay Inc. v. Agudelo*, No. 3:19-CV-3027-D, 2020 WL 1692964, at *1 (N.D. Tex. Apr. 7, 2020) (Fitzwater, S.J.) (citations omitted).

Here, the Court denies the Hospitals’ request for jurisdictional discovery on two bases. First, the lack of personal jurisdiction here is clear and BCBSLA’s motion to dismiss did not raise issues of fact. Second, the Hospitals’ request is deficiently vague. They do not identify what discovery is necessary or what facts may be obtained by such discovery. The Court therefore exercises its discretion to deny the Hospitals’ request to conduct jurisdictional discovery.

*D. The Court Grants Leave to Amend.*

“[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the

court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts "should freely give" plaintiffs leave to amend their complaints "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this liberal standard is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citation and emphases omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).

The Hospitals have not yet amended their counts. Also, amendment is not futile because, with evidence, the Hospitals may adequately respond to BCBSLA's factual challenge to subject matter jurisdiction. Moreover, if the Hospitals can show the Court has subject matter jurisdiction over the ERISA count, it can re-raise its pendent personal jurisdiction argument. Accordingly, permitting leave to amend is appropriate under these facts.

*E. The Court Defers Ruling on BCBSLA's Motion to Dismiss the Petition to Compel Arbitration (Count I).*

At this time, the Hospitals have not shown that the Court has jurisdiction over any of the counts it seeks to compel to arbitration. Accordingly, the Court finds it proper to defer ruling on BCBSLA's Rule 12(b)(6) challenge to Count I, which is the petition to compel arbitration, until

after the period for amendment passes. Once the amendment period passes, BCBSLA may re-assert its challenge under Rule 12(b)(6) to Count I.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** BCBSLA's Motion to Dismiss (Doc. 14). Counts II -VI are **DISMISSED without prejudice**. The Court **DEFERS** ruling on BCBSLA's challenge to Count I until after the amendment period has passed and BCBSLA reasserts its challenge.

If the Hospitals seek to amend their complaint, they have leave to do so until September 11, 2026.

**SO ORDERED.**

**SIGNED: August 21, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE